UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
VIDAL TORRES, *individually and on behalf of others similarly situated*,

                Plaintiff,

  -against-

MC GOWAN BUILDERS, d/b/a MC GOWAN; PATRICK MCGOWAN, JOHN DOE, and RUDY DOE,

                Defendants.
-------------------------------------------------------X

MEMORANDUM
AND ORDER
18 CV 6099 (RML)

LEVY, United States Magistrate Judge:

        The parties to this combined Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action seek approval of a "bifurcated" settlement structure. That is, they seek court approval of their FLSA claims alone, while settling their non-FLSA claims separately and privately. For the reasons explained below, I find that the terms of the non-FLSA settlement agreement interfere with the terms of the FLSA settlement agreement in several ways that violate both the letter and the spirit of Cheeks v. Freeport Pancake House, 796 F.3d 199 (2d Cir. 2015). The parties' motion for settlement approval is therefore denied.

### BACKGROUND FACTS

        Plaintiff Vidal Torres ("plaintiff") commenced this wage and hour action against defendants Patrick McGowan and McGowan Builders, Inc. ("defendants") on October 31, 2018.[1] (*See* Complaint, dated Oct. 31, 2018, Dkt. No. 1). Defendants are alleged to operate a construction company located at 1610 East Union Avenue in East Rutherford, New Jersey,

---

[1] Plaintiff additionally named two "John Doe" defendants who were never identified and are not parties to the settlement agreement currently before the court.

which does business in New York under the name "Mc Gowan." (Id. ¶ 2.) Plaintiff alleges that he was employed by defendants as a laborer from approximately May 2013 to July 2017 and that defendants failed to pay him overtime for hours worked in excess of forty per week. (Id. ¶¶ 4, 11, 38.) He further alleges that defendants failed to pay him the state-mandated "prevailing rate" for work performed in connection with a public works project in Queens. (Id. ¶¶ 5-8.) He therefore asserts claims under the FLSA and NYLL for unpaid overtime, as well as claims for breach of contract, unjust enrichment, and quantum meruit under New York common law. (Id. ¶¶ 76-87; 91-106.) He also claims that defendants failed to provide him with proper wage statements, as is required under the NYLL. (Id. ¶¶ 88-90.)

After engaging in limited discovery, the parties attended a mediation on October 3, 2019. (Selection of Mediator, dated July 15, 2019.) The court subsequently received a report that the case had settled and directed the parties to submit their settlement agreement for fairness review pursuant to Cheeks by November 8, 2019. (Order, dated Oct. 3, 2019.) After receiving numerous extensions of time, the parties filed an agreement as to their FLSA claims only on March 27, 2020. (Motion for Settlement Approval, dated Mar. 27, 2020 ("Mot. for Settlement Approval"), Dkt. No. 25; FLSA Settlement Agreement, annexed as Ex. A.) The brief in support of the parties' motion for settlement approval stated in a footnote that the parties had "separately agreed to settle Plaintiff's state law claims," but failed to explain why a bifurcated settlement structure would be necessary or appropriate in this case. (See Mot. for Settlement Approval at 1 n.1.) Shortly after filing their motion, the parties consented to my jurisdiction to conduct the fairness review. (Consent to Magistrate Judge Jurisdiction, dated Mar. 30, 2020, Dkt. No. 26.) On April 16, 2020, I held at a fairness hearing at which counsel were unable to articulate specific reasons why a bifurcated settlement should be approved in this case. I therefore directed the

2

parties to submit their non-FLSA settlement agreement for *in camera* review, which they did later that day.  (Minute Entry, dated Apr. 16, 2020; Non-FLSA Settlement Agreement, filed under seal Apr. 16, 2020, Dkt. No 28.)

## DISCUSSION

"[T]he FLSA is a uniquely protective statute."  Cheeks, 796 F.3d at 207.  One of the fundamental goals of settlement review and approval is "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees."  Id.  The Second Circuit, citing several examples of abusive FLSA settlement terms, concluded in Cheeks that "the need for such employee protections, even where the employees are represented by counsel, remains."  Id.  The Second Circuit thus held that court approval is required for all stipulated dismissals of FLSA actions with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  Id. at 206.  "The Court's obligation to police FLSA settlements to ensure that they are fair and reasonable is demanding.  It implicates both the rights of the settling employee and the interests of the public at large."  Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015).

Since Cheeks was decided, wage and hour litigators have employed several approaches in attempting to avoid judicial review of their settlement agreements.  See, e.g., Jones v. Smith, 319 F. Supp. 3d 619, 622-24 (E.D.N.Y. 2018) (rejecting effort to stipulate as to independent contractor status of plaintiff for settlement purposes to avoid Cheeks review); Gallardo v. PS Chicken Inc., 285 F. Supp. 3d 549, 551-53 (E.D.N.Y. 2018) (rejecting effort to dismiss FLSA claims without prejudice while settling non-FLSA claims without Cheeks review); Carson v. Team Brown Consulting, Inc., 416 F.Supp.3d 137, 138-142  (E.D.N.Y. 2017) (finding that, while it is unsettled whether voluntary dismissals without prejudice in FLSA actions may be

3

granted without judicial review, litigants should not use them as a mechanism to effect an end-run around the policy concerns articulated in Cheeks).

Whether a bifurcated settlement is permissible under Cheeks remains an open question. See Fisher v. SD Protection Inc., 948 F.3d 593, 607 n.12 (2d Cir. 2020) ("We do not have such a bifurcated settlement before us and thus we do not decide whether the settlement of state law claims paired with FLSA claims requires judicial approval."). While a handful of district courts in this circuit have permitted bifurcated settlements, see, e.g., Yunda v. SAFI-G, Inc., No. 15 CV 8861, 2017 WL 1608898, at *2 (S.D.N.Y. Apr. 28, 2017); Abrar v. 7-Eleven, Inc., No. 14 CV 6315, 2016 WL 1465360, at *1 (E.D.N.Y. Apr. 14, 2016), others have taken a case-by-case approach, requiring the parties to submit both agreements so that the court can determine whether the terms of the non-FLSA agreement inappropriately affect the terms of the FLSA agreement, see, e.g., Bazile v. Asset Protection Grp. LLC, No. 18 CV 6820, 2019 WL 7985168, at *4 (E.D.N.Y. Nov. 27, 2019) (requiring public filing of non-FLSA settlement agreement); Hotaranu v. Star Nissan Inc., No. 16 CV 5320, 2018 WL 1136528, at *1-2 (E.D.N.Y. Feb. 27, 2018) (permitting non-FLSA agreement to be filed under seal pending *in camera* review). This court takes the latter approach; thus I have requested that the parties submit the non-FLSA settlement agreement for *in camera* review.

Having reviewed the non-FLSA settlement agreement, I am troubled by the presence of several provisions that would be impermissible if included in the FLSA settlement agreement, yet do not appear to be cabined in any meaningful way to the non-FLSA claims. Most concerning is the inclusion of a sweepingly broad confidentiality provision which, on its face, applies to all claims asserted in the complaint, including FLSA claims that may not be settled confidentially. See Cheeks, 796 F.3d at 206 (citing to highly restrictive confidentiality

4

provisions as an example of the "potential for abuse" in FLSA settlements); Martinez v. Gulluoglu LLC, No. 15 CV 2727, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) ("Both before and after the Second Circuit's decision in [Cheeks], courts in this Circuit have routinely found confidentiality provisions in FLSA settlements against public policy."). The confidentiality provision provides, in relevant part, that:

> Plaintiff shall not, except as compelled by law, publicize or disclose to any person *any allegations of unlawful conduct by Released Parties* or the terms of this agreement. This covenant of confidentiality includes, but is not limited to, *the claims of unlawful conduct asserted in the pleadings*, the terms of this agreement, and Plaintiffs' receipt of payment hereunder.

Non-FLSA Settlement Agreement ¶ 8(a) (emphases added). This broadly written confidentiality provision is furthermore backed by a liquidated damages provision, which provides that, in the event of breach, plaintiff will:

> (i) forfeit any monies due, but unpaid hereunder; (ii) be liable for liquidated damages in the amount of ninety percent (90%) of the amount paid to Plaintiff[] hereunder or for all actual damages, whichever is greater; and (iii) reimburse Released Parties for all attorneys' fees and costs incurred in enforcing this provision[.]

Id. ¶ 8(b). While the confidentiality provision, which extends to the FLSA claims, is troubling by itself, it is particularly so when paired with the threat of high liquidated damages, insofar as the combination of these two provisions could have the effect of chilling plaintiff's speech as to matters that he ultimately has the right to discuss. See Nights of Cabiria, 96 F. Supp. 3d at 180 (noting that the combination of liquidated damages and confidentiality provisions in FLSA settlement agreements may have "the insalubrious effect of threatening to penalize an FLSA plaintiff who discusses his or her efforts to enforce statutory rights to fair pay.").

The non-FLSA settlement agreement additionally contains a very broad mutual non-disparagement provision, which provides that:

5

> The parties shall not make any statement or disclosure to anyone or any oral or written statement that would negatively comment on, disparage, or call into question the business operations, policies, or conduct of the other, including, but not limited to, anything that is or could be seen as disparaging, discriminatory, harassing, degrading or embarrassing to the other.

Non-FLSA Settlement Agreement ¶ 9.  Once more, this language does not appear to be restricted to the non-FLSA claims.  With respect to claims subject to review under Cheeks, while "not all non-disparagement clauses are *per se* objectionable, if the provision would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case." Lazaro-Garcia v. Sengupta Food Servs., No. 15 CV 4259, 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (citation and internal quotation marks omitted).  Without such a carve-out, the non-disparagement provision could function as a *de facto* confidentiality provision.  In this case, the non-disparagement provision contains a carve-out permitting the parties to "testify truthfully pursuant to subpoena, court order or other lawfully compelled testimony." Non-FLSA Settlement Agreement ¶ 9.  This is too narrow a carve-out for so broad a non-disparagement provision.  Plaintiff is permitted to make truthful statements about the litigation and settlement of his FLSA claims regardless of whether he has been subpoenaed or compelled to do so.

Finally, the non-FLSA settlement agreement contains a general release of claims. Id. ¶ 5.  Cheeks specifically cited to overbroad releases that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" as highlighting the "potential for abuse" in FLSA settlements.  See 796 F.3d at 206 (citation omitted).  Accordingly, courts in this circuit have routinely rejected FLSA settlement agreements containing general releases.  See, e.g., Aguilar v. N & A Prods. Inc., No. 19 CV 1703, 2019 WL 5449061, at *3 (S.D.N.Y. Oct. 24,

6

2019) ("By failing to limit the release provision to the wage-and-hour claims at issue in this action, the Agreement improperly 'confers an uncompensated, unevaluated, and unfair benefit on the employer and is inequitable and unfair.'" (quoting Nights of Cabiria, 96 F. Supp. 3d at 181)); McCall v. Brosnan Risk Consultants, Ltd., No. 14 CV 2520, 2016 WL 4076567, at *2 (E.D.N.Y. Apr. 15, 2016) (rejecting motion for approval of proposed settlement in part because it contained "an overbroad release of claims that [was] not limited to matters addressed in this action," and noting that "District Courts in this Circuit have declined to approve FLSA agreements containing releases that are far too sweeping to be fair and reasonable" (internal quotation marks and citation omitted)).  While the FLSA settlement agreement contains a release that is properly tailored to wage and hour claims, this limited release is illusory so long as the non-FLSA settlement agreement releases those claims that would be impermissible to release in the FLSA settlement agreement.[2]  See Bazile, 2019 WL 7985168, at *3 ("A plaintiff who executes a FLSA settlement containing a limited release, while simultaneously executing a NYLL settlement containing a general release, has not in fact received a limited release.").  The general release is therefore functionally controlling as between the two.[3]

---

[2] Moreover, the mutuality of the general release does not salvage it, absent some explanation of how it benefits plaintiff.  See, e.g., Bukhari v. Senior, No. 16 CV 9249, 2018 WL 559153, at *2 (S.D.N.Y. Jan. 23, 2018) (explaining that, "despite the formal reciprocity of such releases, their practical effect in some cases may be lopsided because they may stand to benefit only the employer defendant, who realistically may be less likely than the employee plaintiff to have latent claims against its adversary").  No such explanation has been provided here.

[3] For this reason, I also find it concerning that the non-FLSA settlement agreement contains a "spoiler clause" within the severability provision, which provides that:

> if the general release of claims herein is limited or held to be null and void, (i) this Agreement shall be interpreted to bar any claims Releasors may assert against Releasees; and (ii) Plaintiff[] shall execute an enforceable general and unlimited release of all claims

(Continued . . . )

Because the non-FLSA settlement agreement is not technically before me for review, I cannot modify or strike those offending terms from the agreement, as I have done with respect to FLSA settlement agreements in other cases.  See, e.g., Viera v. V.N.A. Utility Contracting Co., No. 17 CV 7243, Dkt. No. 34 (E.D.N.Y. Jan. 21, 2020) (striking confidentiality provision and approving agreement on the consent of the parties after a fairness hearing) (unpublished order); Villa v. Car Magic Auto Repair, Inc., No. 18 CV 489, Dkt. No. 28 (E.D.N.Y. Feb. 15, 2019) (narrowing release and approving agreement on the consent of the parties after a fairness hearing) (unpublished order).  Moreover, the Second Circuit has recently cautioned district courts not to "rewrite" settlement agreements "by imposing terms on the parties to which they did not agree."  Fisher, 948 F.3d at 605.  I therefore have no choice but to reject the FLSA settlement agreement.

I do not reject this settlement lightly.  It was clearly the product of significant work on behalf of counsel, reached after extensive settlement discussions facilitated by a mediator.  I am additionally conscious of the effects of the COVID-19 pandemic on the economy and plaintiff's need to receive his settlement funds expeditiously.  The mandate of Cheeks, however, is clear, and the court cannot run afoul of that simply because of an employer's strong desire to shield the true details of its settlement from public scrutiny—even if the individual employee is content to have his settlement remain secret.  See Guarnero-Ruiz v. 36-03 Food,

---

on behalf of Releasors against Releasees without receiving additional consideration.

Non-FLSA Settlement Agreement ¶ 10.  This provision implicitly challenges the court's ability to review and limit release language that ultimately controls, albeit indirectly, the FLSA settlement agreement.  See Nieto v. Izzo Constr. Corp., No. 15 CV 6958, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018) (noting that such spoiler clauses, if allowed to stand, "would permit further end-runs around Cheeks that this court cannot—and will not—countenance").

LLC, No. 17 CV 3178, 2017 WL 7049543, at *10 (E.D.N.Y. Dec. 11, 2017) ("[T]he clear mandate of Cheeks is to have courts scrutinize settlement agreements that forever dispose of a worker's claims, because the FLSA demands their protection from certain invidious conduct."). This court takes that mandate, rooted in the FLSA's remedial and uniquely protective purpose, extremely seriously.

      The parties are hereby directed to attempt to renegotiate their settlement to achieve a unified settlement agreement that settles both plaintiff's FLSA and non-FLSA claims, and to file that agreement publicly for judicial review, within forty-five (45) days of the date of this order.  If the parties are unable to reach such an agreement, they shall file a status report setting forth a schedule for concluding discovery and proceeding to trial.

      SO ORDERED.

Dated: Brooklyn, New York
       September 8, 2020

                                               /s/
                                    ROBERT M. LEVY
                                    United States Magistrate Judge